**In re KTMA ACQUISITION CORP.,
d/b/a KTMA TV 23, Debtor.**

**Bankruptcy No. 4–89–3530.**

United States Bankruptcy Court,
D. Minnesota.

March 16, 1993.

Steven L. Freeman, Minneapolis, MN, for the Committee of Unsecured Creditors.

Thomas J. Lallier, Minneapolis, MN, for Sonlight Television, Inc.

Larry B. Ricke, Minneapolis, MN, for trustee.

Katherine A. Constantine, Minneapolis, MN, for Investment Ltd. Partnership.

N. Walter Goins, debtor, pro se.

Albert Turner Goins, Maplewood, MN, assisted N. Walter Goins.

## ORDER IMPOSING SANCTIONS

ROBERT J. KRESSEL, Chief Judge.

This case came on for hearing on November 4, 1992 on the motions of the Committee of Unsecured Creditors, Sonlight Television, Inc. and the trustee for the imposition of sanctions against N. Walter Goins pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure. Steven L. Freeman appeared for the Committee of Unsecured Creditors, Thomas J. Lallier appeared for Sonlight Television, Inc., Larry B. Ricke appeared for the trustee and Albert T. Goins assisted N. Walter Goins appearing *pro se*. This court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(a) and Local Rule 201. Based on the motions, the entire file, the evidence and the arguments of the parties, I make this memorandum order:

### FACTS

#### I.

##### Background[1]

From 1982 to 1987, N. Walter Goins was the president and the sole shareholder of L.E.O. Broadcasting, Inc., a Minnesota corporation which owned and operated Stations KXLI–TV (Channel 41) and KXLT–TV (Channel 47). In 1987, Goins sold L.E.O. to Halcomm, Inc. in exchange for 110,000 shares of stock amounting to twelve and twenty two one hundreds percent (12.22) ownership interest. Besides Goins, Halcomm's shareholders included Dale W. Lang. Lang was both Halcomm's controlling shareholder and largest creditor. Lang held mortgages and security interests in substantially all of Halcomm's assets.

On November 18, 1988, Halcomm informed its shareholders that it was considering the sale of all or substantially all of the corporation's assets. Halcomm planned to sell its assets to a new corpora-

---

1. I derived most of the background facts from the district court's order granting summary judgment in *Goins v. Lang, Jensen, Halcomm, Inc., et al.*, Civil No. 4–92–154 (D.Minn. October 10, 1992) (MacLaughlin, J.). Other than a few stray facts here and there Goins never provided a meaningful coherent review of the factual background of his pleadings.

tion. The new corporation was to consist of all the assets of Halcomm, KTMA Acquisition Corp. and Red River Broadcast Corp. Halcomm scheduled a shareholders meeting for December 8, 1988 to obtain approval for the sale.

On November 30, 1988, representatives of KTMA, Red River and Halcomm entered into a Letter Agreement. In the Letter Agreement, the parties agreed to form a new corporation to assume the assets and liabilities of Halcomm, KTMA and Red River. The Letter Agreement explicitly required the approval of the shareholders of Halcomm, KTMA and Red River.

On December 5, 1988, Goins, by written notice to Halcomm, dissented from the sale and expressed his intent to demand the fair value of his shares under Minnesota law. Halcomm's shareholders approved the transaction at the shareholders meeting on December 8, 1988. However, neither KTMA nor Red River were able to obtain financing. The new corporation was never formed and the parties agreed to abandon the transaction.

A year later, on December 30, 1989, Lang, foreclosed on Halcomm's assets and sold them at a public auction. Lang purchased the assets himself at the auction for $5 million.

## II.

### The Papers Filed in the KTMA Chapter 11 Case

On July 28, 1989, KTMA, one of the parties to the Letter Agreement, filed a voluntary Chapter 11 case. KTMA operated as a debtor-in-possession until August 27, 1991 when a trustee was appointed pursuant to 11 U.S.C. § 1104.

### A. The Proof of Claim

Shortly after his appointment, the trustee entered into negotiations to sell all or substantially all of the debtor's assets. Ultimately, Sonlight Television, Inc. and the trustee entered into a purchase agreement. News broke of this tentative agreement and Goins filed a Proof of Claim on November 18, 1991. Goins' proof of claim is number 171. In the proof of claim, Goins asserts:

1. he was a 12.22% dissenting shareholder of Halcomm, Inc.; and

2. that the Letter Agreement is an executory contract and that the claimant has a claim against the debtor as evidenced by the signatures of Dale W. Lang as President of Halcomm and officer of KTMA Acquisition Corp.

Goins attached a copy of the Letter Agreement and signed the proof of claim.

### B. Objection of Claimant & Motion for Stay of Approval of Trustee's Motion & Declaratory Relief

The trustee filed a motion to approve his sale of the debtor's assets to Sonlight. In response, Goins filed an "Objection of Claimant and Motion for Stay of Approval of Trustee's Motion and Declaratory Relief" on December 12, 1991. The motion asserted:

1. he was moving for a stay of approval of the trustee's motion to sell all assets free and clear of liens and sought declaratory relief under 28 U.S.C. § 2201;

2. he is a dissenting shareholder to a binding letter agreement and therefore has a claim under 11 U.S.C. § 101(4);

3. as a dissenting shareholder to the debtor's November 30, 1988 letter agreement he was entitled to a first priority claim on the assets of the debtor;

4. that because the trustee failed to file a copy of the Letter Agreement for inspection, "the court [is to] require the Trustee" to include the rights under the November 30, 1988 letter agreement as part of the KTMA assets sold and "to act to enforce the terms of the ... 'Letter Agreement'";

5. Goins "further move[d] and request[ed] that the Trustee be required and declared to have established a constructive trust of any and all funds received by the estate as a

result of any plan of sale, transfer, or assignment of the assets, leases, and contracts of the Debtor to the complete full, and sole benefit of claimant, ... as a dissenting shareholder of a co-signatory of the ... 'Letter Agreement', notwithstanding any asserted claims of priority, whether secured or unsecured, and notwithstanding any stipulations entered into by the Debtor as 'Debtor in Possession', or the Trustee herein";

6. that there was "direct and collateral evidence that the Trustee and/or certain parties in interest in this proceeding may have failed to comply with or sought to evade the requirements of 47 CFR § 73.3613 and other rules of the Federal Communication Commission required of licensees";

7. that "based on a cursory review of the docket, it would appear that certain application filings made by the Debtor may have been undertaken to work in concert with other commission licensees to evade these ownership contract filing agreements, and thus to result in possible violations of title 18, [sic] U.S.C. § 151 et seq.";

8. that "certain documents now of record with the Minnesota Secretary of State ... indicate that certain parties in interest may have acted to avoid revealing certain regulatory requirements to this Court which would flow from the compliance with Federal Communication Commission rules"; and

9. that "based upon regulatory requirements of Section 362 of the Code and the pertinent Commission rules and other law, as well as matters of

which this Court may take official notice, the requested relief should be granted pending final determination of the regulatory issues herein."

Goins signed and verified[2] his motion.

### C. *Writ of Mandamus*[3]

On December 19, 1991, Goins provided this court with a copy of a "Petition for Writ of Mandamus Against Officer of the United States Donald R. Johnston, Trustee and to Compel Compliance with the Federal Communications Commission's Rules" to be heard by the U.S. Court of Appeals for the District of Columbia.

### D. *Motion to Quash*

The trustee investigated Goins' proof of claim and on December 20, 1991 served on Goins a Notice of Taking Deposition and Request for Production of Documents pursuant to Rule 9014 of the Federal Rules of Bankruptcy Procedure. A deposition subpoena was issued by the Clerk of the United States Bankruptcy Court instructing Goins to appear, be deposed and to produce certain documents on December 30, 1991. On December 24, 1991, Goins filed a Motion to Quash asserting:

1. "the matters sought to be discovered by the terms of the subpoena relate to certain matters now pending the the [sic] U.S. Court of Appeals for the District of Columbia Circuit ... and other matters pending appeal at the Federal Communications Commission ...";

2. the subpoena was "illegal"; "there was no evidence of proof of service of the notice of subpoena made to the clerk of court";

---

**2.** Verification is simply the unsworn "declar[ation] ... under penalty of perjury that the foregoing [assertions of facts and law are] true and correct." 28 U.S.C. § 1746; *see also* Local Rule 102(11).

**3.** While Goins sent copies of pleadings originally filed in other courts, I do not consider these papers to have been "served or filed in [this] case...." *See* Fed.R.Bankr.P. 9011. Therefore, I am not sanctioning Goins for signing the Peti-

tion for Writ of Mandamus. *See Citizens Bank & Trust Co. v. Case (In re Case )*, 937 F.2d 1014, 1023 (5th Cir.1991) (the court held that neither the bankruptcy court nor the district court could sanction a party for conduct which was aimed at the state court, even though the bankruptcy court had notice of the behavior; it is beyond my "inherent power to award sanctions for bad-faith conduct ... which does not occur in [a] proceeding in the bankruptcy court.").

3. the subpoena was an effort "to avoid the jurisdiction of a superior court on the part of the Trustee and his counsel inasmuch as it relates to matters which are pending in the United States Court of Appeals for the District of Columbia Circuit";

4. the subpoena was a "retaliatory action in breach of the Trustee's duties under Section 362 of title 11 (the Bankruptcy Code), in an effort to eliminate Goins as a proper claimant, thus avoiding the original and appellate jurisdiction of the court of appeals relative to FCC filing Rules and regulatory issues"; and

5. the trustee was "improperly seeking to avoid a required action under Bankruptcy Rule 6006(b) ... in aid for an improper effort to effect a nonjudicial bankruptcy discharge of an equitable interest against other parties including the purported secured lender International or Investment Limited Partnership."

Goins signed and verified the motion. The motion to quash was denied on December 26, 1991 and the deposition took place as scheduled on December 30, 1991.

### E. *Motion to Strike Trustee's Unauthorized Motion to Approve Rejection of Executory Contract*

The trustee also filed a motion asking the court to determine that the Letter Agreement had been abandoned or to approve his rejection of the agreement. On December 26, 1991, Goins filed a "motion to strike trustee's unauthorized motion to approve rejection of executory contract." Supporting his motion Goins asserts:

1. that the trustee has breached his duty by not filing a copy of the Letter Agreement with the Federal Communication Commission;

2. Investors Limited Partnership holds a security interest in the Letter Agreement which is being impaired by the sale;

3. that if the Letter Agreement is rejected in bankruptcy, Goins would obtain "equitable claims and interests

in several Minnesota television stations";

4. "there is an existing state law statutory proceeding which is awaiting the proper judicial determination of Goins' share appraisal value". There is "no federal question ... raised under this proceeding which is governed by Minnesota Statutes 302A. Nor, does the fact that the contract giving rise to Goins' dissent, is governed by New York law raise any federal question. Congress has codified at 28 U.S.C. § 1334(c)(2) the requirement of the Tenth Amendment respecting the concept of federalism." Thus, the court should abstain;

5. the trustee's motion contained "factual infirmities"; and

6. that notice was deficient.

The motion was signed and verified by Goins.

### F. *Motion for Declaratory Ruling & Declaration*

The next day, December 27, 1991, Goins filed a motion for declaratory ruling and declaration. No adversary proceeding was brought nor did the motion papers conform to the Local Rules. The moving papers sought to have the court determine whether the trustee had violated a lending agreement between KTMA and Investment Limited Partnership. Specifically, Goins sought:

a determination by the Court as to whether or not the recent plan [sic] as proposed by the Trustee for the sale of certain assets of the Debtor, and which purportedly will result in the lien of ILP attaching to the proceeds of such purported sale, in conjunction with the recent motion of the Trustee to disallow the claims of N. Walter Goins, claimant, constitutes an actual or *de facto* impairment of the lien or purported lien of ILP in that November 30, 1988 "Letter Agreement", in breach of the Trustee's stipulation made a part of this proceeding. Alternatively, Goins would seek that the Court determine whether the Trustee's failure to concede Goins' claims

against the estate and as being as [sic] prior to or *pari passu* with ILP, and specifically with respect to any lien rights of ILP which may attach to the proceeds from the sale of Debtor's assets are in fact an improper effort in furtherance of an illegal agreement or undertaking to complete the effectuation of an improper non-bankruptcy or bankruptcy discharge of an outstanding equitable interest or claim against the purported security interest of ILP in said November 30, 1988 "Letter Agreement".

Goins signed and verified the moving papers. The motion was denied on January 3, 1992.

### G. Objection to Amended Notice & Trustee's Motion for Approval of Sale of Substantially all Assets of Estate & Motion for Approval of Assumption & Assignment of Substantially all Leases & Contracts

On December 30, 1991, Goins filed an "objection to amended notice and Trustee's motion for approval of sale of substantially all assets of estate and motion for approval of assumption and assignment of substantially all leases and contracts." In this motion, Goins "continue[d] his objection to any and all plans of the Trustee which result in a sale of substantially all assets of the estate and the transfer of substantially all leases and contracts of the estate if such plan does not provide that Goins receive the full and fair payment of his interest...." Goins signed and verified the motion.

### H. Petition for Writ of Prohibition [4]

On December 30, 1991, Goins provided this court with a copy of a "Petition for Writ of Prohibition." This petition was originally filed in the United States Court of Appeals for the District of Columbia Circuit.

### I. Objection to Motion to Approve Assumption and Rejection of Executory Contracts

As part of the trustee's motion to approve the sale of the debtor's assets, the trustee filed a motion to approve his assumption or rejection of various executory contracts. Goins filed an "objection to motion to approve assumption and rejection of executory contracts on January 2, 1992. In the motion, Goins sets forth:

1. that "this matter is based on his 12.-22% dissenting shareholder position in Halcomm, Inc.";

2. that Investment Limited Partnership asserts a senior secured interest in the Letter Agreement because of a March 1977 UCC–1 Financing Statement. He further states that his "claim in interest in the estate includes an equitable right to payment by the proceeds that may attach to the liens and claims.... Goins equitable right to receive payment under the Bankruptcy Code rests in Goins' state law property rights pursuant to Minnesota Statutes 302A and the November 30, 1988 Letter Agreement. Goins previously requested this Court abstain from any action that would impair Goins' state law rights as they relate to the Debtor and this matter pursuant to 28 U.S.C. § 1334(c)(2). The instant motion of the Trustee seeking approval of assumption and rejection of contracts by its terms and requested relief would vitiate Goins' state law rights by asking this Court to ignore the mandatory abstention requirements of 28 U.S.C. § 1334(c)(2)"; and

3. that "this motion of the Trustee is inextricably ties to matters before the Federal Communications Commission.... that he has properly brought the matters of the improper concealment of the November 30, 1988 Letter Agreement and the improper and fraudulent transfers of KTMA, Halcomm, and Red River Broadcasting, broadcast licenses which fraudulent transfers include the transfer of the KTMA Commission authorities [sic] under involuntary applications to the Debtor estate

---

**4.** *See* footnote 3 *supra.*

and ultimately to the Trustee, Don R. Johnston, Esq., ... These matters are also pending before the U.S. Court of Appeals for the District of Columbia Circuit. Goins has previously plead to the Commission and the Circuit Court that the Congress intended by its spending power to limit the grant of jurisdiction under Public Law 102–140, (the Act), insofar that any instrumentality funded by the Act, including the federal courts and the U.S. Trustee, or other government instrumentality might take any action contrary to purposes and requirements of the Commission's Minority Ownership Policy. This would include using a bankruptcy proceeding as a proxy for the distress sale proceeding and the Minority Policy, when they violate that policy or when those actions effectuate or complete other actions in violation thereof, or as a means of evading Commission regulatory requirements precedent to the effectuation or enforcement policies including discharges in bankruptcy. That is to say that this Court may not be used as an escape route by discharge or assumption motions in the avoidance of the regulatory requirements of Pub.Law 102–140 because the Act binds both the Commission and the Trustee, as well as the Courts. Therefore, this bankruptcy court, it is respectfully submitted, has no jurisdiction to rule or take any action concerning the November 30, 1988 Letter Agreement, or any other collateral contracts or agreements, which would include discharge, assumption and/or assignment, or to adjudicate any of Goins' rights, legal or equitable, public or private, administrative or constitutional, so as to impair Goins, until there would be a previous determination in the agency or the Court of Appeals on those matters relating to Goins' status as a minority broadcaster before the Commission. Any action which would have the effect or result in a ruling that would impair the ability of the the [sic] federal courts or any agency to determine Goins' rights or interest under the Commission's minority ownership policy would be contrary to congressional intent and would prevent the Court of Appeals from properly deciding or determining whether the agency, or any other instrumentality within the province of Pub.Law 102–140, had used public funds to retroactively apply changes to, or repeal, or continue a re-examination of the FCC's minority ownership policies...."

Goins signed and verified the moving papers. I approved the sale on January 3, 1992. Sonlight purchased the assets of the debtor. I also found that the November 30, 1988 Letter Agreement was terminated prior to commencement of the chapter 11 case and was not an executory contract. Alternatively, to the extent the agreement was an executory contract, I approved the trustee's rejection. Goins appealed these orders to the District Court. The District Court dismissed the appeals. *Goins v. Johnston* (*In re KTMA Acquisition Corp.*), No. 4–89–3530 (D.Minn. Apr. 27, 1992) (Doty, J.). A motion for reconsideration is pending.

### J. Motion for Declaratory Relief [5]

On January 2, 1992 Goins provided this court with a copy of a "Motion for Declaratory Relief." This motion was originally filed with the United States Court of Appeals for the District of Columbia Circuit.

### K. Supplement to Requests for Extraordinary Writs [6]

Additionally on January 2, 1992, Goins provided this court with a copy of a "Supplement to Requests for Extraordinary Writs." This motion was originally filed with the United States Court of Appeals for the District of Columbia Circuit.

---

**5.** *See* footnote 3 *supra.*

**6.** *See* footnote 3 *supra.*

### L. Motion to Strike Trustee's Motion Under § 502

Goins next brought a "motion to strike trustee's motion under 502" on January 17, 1992. Goins again asserted he had "a claim against the Debtor's estate or alternatively a claim of interest in the assets of the station by reason of claimant's rights and ownership as a dissenting shareholder in Halcomm, Inc., a signatory to a November 30, 1988 Letter Agreement with the Debtor, and by reason of 11 U.S.C. § 101(4)(A) and (B)." Thus, Goins alleges, under 11 U.S.C. § 502(b) his claim should be determined by this court. The motion was signed and verified by Goins.

### M. Objection to Trustee's Objection to Notice of Proof of Claim Filed by N. Walter Goins

This motion was followed by an objection to trustee's objection to notice of proof of claim filed by N. Walter Goins on January 21, 1992, asserting that "the relief requested by the Trustee, if granted, would deny Goins his due process rights in light of the procedural history of this case." Goins signed and verified the motion. I denied Goins' motion to strike and disallowed his claim on January 29, 1992. Goins appealed those orders to the district court. The April 27, 1992 order of the district court also dismissed that appeal.

Sonlight, the trustee and the Committee of Unsecured Creditors brought motions for the imposition of sanctions pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure.

### III.

### The Hearing on Imposition of Sanctions

On November 4, 1992, a hearing on the imposition of sanctions was held. Goins was sworn and asked a series of specific questions relating to each of the motions and pleadings he had filed. This proceeding was highly contentious and Goins' testimony was nonresponsive and patronizing.

Questioning began with the proof of claim. Goins was asked whether he had any documentary evidence or other support for his proof of claim. Goins candidly responded that before he filed the proof of claim he had not spoken with the trustee; he had not called KTMA; he had not made any inquiry; and that he had never provided this court with any documentary evidence besides the Letter Agreement to support any allegation that the Letter Agreement had not been abandoned by the signatory parties. Goins also asked the trustee's attorney what investigation he had done.

The questions moved on to Goins' objection to the trustee's proposed sale. First, Goins was asked what support he had for the imposition of a constructive trust. Goins stated that he had done "a little" legal research and that he had consulted with his brother, Albert T. Goins, an attorney. Second, Goins was asked what was his basis for asserting that he had a first priority claim. Goins claimed he had a book on bankruptcy; he had done some legal research on priority claims; and he had discussed the issue with his brother. All of this, Goins stated, led him to believe that as a dissenting shareholder to the Letter Agreement he had a first priority claim. When pushed further, Goins asserted that the Letter Agreement was property of the KTMA estate and that he had an "equitable right" to payment on this property pursuant to Minn.Stat. § 302A.

This naturally led to a discussion of the impending Minn.Stat. § 302A action. Goins stated that he had brought a § 302A action in Sherburne County District Court case number 92C–1399. However, no documentary evidence was produced nor was this ever brought out before this hearing.

Closely related to the impending § 302A litigation, Goins was queried on his assertion that the trustee had breached his duty by not asserting the state law remedy. Goins, asserted that the trustee had a duty to intervene since it is his responsibility to ascertain all property of the estate and the extent of all claims held by the estate. To that end, Goins had concluded that the Letter Agreement had value to the estate since KTMA was a signatory.

This conclusion led to further discussion of the Letter Agreement. Goins admitted that he was not a signatory to the Letter Agreement or an agent of the signatories. Goins did not believe he needed to be a signatory; his dissenting shareholder status made him a party; he was in privity because of his shareholder status. When pursued further, Goins admitted that none of the original signatories ever appeared to bolster his theory that the Letter Agreement was still binding or that he was a party to the Agreement. However, Goins repeatedly stated that he would produce documents which supported his theory. No documents were presented.

Goins was then cross examined by his brother. Goins did not discuss what investigation or inquiry he performed before filing any of his papers. Rather, the entire examination focussed on the behavior of the trustee, the trustee's lawyers and the lawyers representing parties requesting sanction and their lack of investigation into the Letter Agreement. At the conclusion of Goins' testimony, Goins gave the court a verified statement.[7]

## DISCUSSION

### I.

### *The Legal Standards*

**A.** *Rule 9011*

■ In relevant part, Rule 9011 of the Federal Rules of Bankruptcy Procedure provides that:

A party who is not represented by an attorney shall sign papers and state the party's address and telephone number. The signature of a ... party constitutes a certificate that the party has read the document; that to the best of the ... party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose,

such as to harass or to cause unnecessary delay or needless increase in the cost of litigation or administration of the case.

Fed.R.Bankr.P. 9011. Simply, a party's signature on a pleading, motion or other paper constitutes an affirmative certification that:

1. there was a "reasonable inquiry" of the relevant facts and law;

2. that the signer believed its filing was "well grounded in fact";

3. that the legal theory behind the claims for relief were objectively "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law"; and

4. that the filing was "not interposed for any improper purpose" such as harassment, delay, or an unnecessary increase in cost.

*See id.* If any of the first three conditions are not met, the filing is considered "frivolous". If the fourth qualification is violated, the purpose of the filing is deemed "improper". However, each condition has independent significance. When any one of the four elements of Rule 9011 is violated, the court must impose sanctions. *Stuebben v. Gioioso (In re Gioioso)*, 979 F.2d 956, 960–61 (3d Cir.1992) ("where the court finds a violation of Rule 9011, the court must apply a sanction.... The court's discretion lies not in its conclusion to sanction but in its determination of what sanction to apply.") (citing *Cinema Svs. Corp. v. Edbee Corp.*, 774 F.2d 584 (3d Cir.1985); *Thomas v. Capital Security Svs., Inc.*, 836 F.2d 866, 877 (5th Cir.1988); *Wise v. Pea Ridge School District No. 109*, 675 F.Supp. 1524 (W.D.Ark.1987), *aff'd*, 855 F.2d 560 (8th Cir.1988); *In re Powers*, 135 B.R. 980, 998 (Bankr.C.D.Cal.1991)); *accord Mortgage Mart, Inc. v. Rechnitzer (In re Chisum)*, 847 F.2d 597, 599 (9th Cir.1988); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 392, 110 S.Ct. 2447, 2454, 110

---

7. In a rather McCarthyesque fashion, Goins repeatedly referred to all the evidence he had, sometimes mentioning a "stack" of paper at

counsel table. However, in spite of several invitations to do so, no evidence was ever offered.

L.Ed.2d 359 (1990) ("An attorney who signs the paper [in violation of Rule 9011] 'shall' be penalized by 'an appropriate sanction.' ").

■ Rule 9011 of the Federal Rule of Bankruptcy Procedure and Rule 11 of the Federal Rule of Civil Procedure are nearly identical and serve a common goal. Thus, decisions under Rule 11 apply when deciding Rule 9011 motions. *See In re Gioioso,* 979 F.2d at 960; *Caldwell v. Farris (In re Rainbow Magazine, Inc.),* 136 B.R. 545, 550 (Bankr. 9th Cir.1992) (citing *In re Chisum,* 847 F.2d 597, 599 (9th Cir.1988)); *Cinema Svs. Corp. v. Edbee Corp.,* 774 F.2d 584, 585 (3d Cir.1985); *Putnam Trust Co. of Greenwich v. Frenz (In re Frenz),* 142 B.R. 611, 613 n. 1 (Bankr.D.Conn.1992).

**B.** ***What Standard is Applied to the Facts Surrounding an Alleged Rule 9011 Violation?***

■ Violations of Rule 9011 are determined by applying an objective standard of reasonableness under the circumstances. *See Business Guides, Inc. v. Chromatic Communications Enters., Inc.,* 498 U.S. 533, 554, 111 S.Ct. 922, 934–35, 112 L.Ed.2d 1140 (1991); *Lancellotti v. Fay,* 909 F.2d 15, 19 (1st Cir.1990) (reversing the district court because of its use of a subjective standard); *N.A.A.C.P. v. Atkins,* 908 F.2d 336, 339 (8th Cir.1990) (district court must apply "objective reasonableness" standard); *Eavenson, Auchmuty & Greenwald v. Holtzman,* 775 F.2d 535, 540 (3d Cir.1985); *Stevens v. Lawyers Mut. Liab. Ins. Co. N.C.,* 789 F.2d 1056, 1060 (4th Cir.1986); *Davis v. Veslan Enters.,* 765 F.2d 494, 497 n. 4 (5th Cir.1985); *Albright v. Upjohn Co.,* 788 F.2d 1217, 1221 (6th Cir.1986); *Rodgers v. Lincoln Towing Serv., Inc.,* 771 F.2d 194, 205 (7th Cir.1985); *Hartman v. Hallmark Cards, Inc.,* 833 F.2d 117, 124 (8th Cir.1987); *Zuniga v. United Can Co.,* 812 F.2d 443, 452 (9th Cir.1987). Indeed, signers "canno[t] ... avoid the sting of Rule 11 sanctions by operating under the guise of a

pure heart and empty head." *Id.* "Simply put, subjective good faith ... [does not] ... provide[ ] the safe harbor it once did." *Eastway Const. Corp. v. City of New York,* 762 F.2d 243, 253 (2d Cir.1985), *modified,* 821 F.2d 121 (2d Cir.), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).

Applying the standard I must be mindful of the purposes behind Rule 9011. It is well settled that the purpose of Rule 9011 is "to deter baseless filings ... and thus ... streamline the administration and procedure of the federal courts.... Although the Rule must be read in light of concerns that it will spawn satellite litigation and chill vigorous advocacy, any interpretation must give effect to the Rule's central goal of deterrence." *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 392, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990); *Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989); *White v. General Motors Corp.,* 908 F.2d 675, 683 (10th Cir. 1990) *cert. denied,* 498 U.S. 788, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991) (sanctions serve many purposes—deterrence, punishment, compensation, streamlining dockets—but deterrence is the primary goal); *Quiros v. Hernandez–Colon,* 800 F.2d 1, 3 (1st Cir. 1986) (Rule 11 deters filing of meritless claims and compensates those forced to respond). Unfortunately, sanctions that deter are necessary to remind those who need reminding that a court is not a place to vent unsupported frustration. There is judicial protocol which must be followed. Abuses are not tolerated.

**C.** ***What is a Reasonable Inquiry?***

■ A signer "may not drop papers into the hopper and insist that the court or opposing counsel undertake bothersome factual and legal investigation." *Mars Steel Corp. v. Continental Bank, N.A.,* 880 F.2d 928, 932 (7th Cir.1989).[8] At a

---

**8.** Reasonableness, like obscenity, is not easy to define. My survey of the law has revealed a "I know it when I see it" approach. An example of this is Judge Easterbrook's attempt to define what is a reasonable inquiry in *Mars Steel Corp.:*

A lawyer who founds his suit on *Plessy v. Ferguson* [163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256 (1896)], ... has revealed all we need to know about the reasonableness of the prefiling inquiry. (citation omitted). If the legal

minimum, the reasonable inquiry standard requires at least some affirmative investigation on the part of the signer. *See Cleveland Demolition Co. v. Azcon Scrap Corp.*, 827 F.2d 984, 987 (4th Cir.1987); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1340–41 (9th Cir.1987); *Hale v. Harney*, 786 F.2d 688, 692 (5th Cir.1986) ("The day is past when our notice pleading practice ... [and] liberal discovery rules invited the federal practitioner to file suit first and find out later whether he had a case or not."); *Stewart v. RCA Corp.*, 790 F.2d 624, 633 (7th Cir.1986); *Lieb v. Topstone Indust., Inc.*, 788 F.2d 151, 157 (3d Cir. 1986) (Rule 11 "imposes on [the signer] a duty to look before leaping and may be seen as a litigation version of the familiar railroad crossing admonition to 'stop, look and listen.'") The investigation need not be to the point of certainty to be reasonable. *See Nemmers v. U.S.*, 795 F.2d 628, 632 (7th Cir.1986). However, the signer must explore readily available avenues of factual inquiry. *Chapman & Cole v. Itel Container Int'l.*, 865 F.2d 676, 684 n. 11 (5th Cir.), *cert. denied*, 493 U.S. 872, 110 S.Ct. 201, 107 L.Ed.2d 155 (1989).

■ There is no litmus test that can be applied to a given filing to determine whether Rule 9011 has been violated. Like all other forms of negligence, Rule 9011 inquiries must be made on a case-by-case basis in light of the circumstances. *Business Guides*, 498 U.S. at 550–51, 111 S.Ct. at 933 (citing Advisory Committee's Note to Rule 11 of the Federal Rules of Civil Procedure); *In re Central Ice Cream Co.*, 836 F.2d 1068, 1072 (7th Cir.1987) ("Rule [11] speaks of 'reasonable' pre-filing inquiry, the language of tort law"); *Hays v. Sony Corp.*, 847 F.2d 412, 418 (7th Cir. 1988) ("Rule 11 defines a new form of

legal malpractice"); *see Mars Steel Corp.*, 880 F.2d at 933; *Brown v. Baden* (*In 're Yagman*), 796 F.2d 1165, 1182 (9th Cir. 1986), *cert. denied*, 484 U.S. 963, 108 S.Ct. 450, 98 L.Ed.2d 390 (1987). At times, however, the violation is so obvious that the filing speaks for itself. "That is, Rule 11 no less than common law recognizes the doctrine of res ipsa loquitur...." *Mars Steel Corp.*, 880 F.2d at 932. Thus, just reading the filing supports the conclusion that the signer did not do a reasonable amount of pre-filing inquiry. *Id.*

■ Whether the signer's conduct was reasonable is an inquiry that focuses on what should have been done by the filer before filing rather than how things turned out; conduct rather than result. *Mars Steel Corp.*, 880 F.2d at 932 (citation omitted); *Calloway v. Marvel Entertainment Group*, 854 F.2d 1452, 1470 (2d Cir.1988) ("The signer's conduct is to be judged at the time the pleading or paper is signed....") *rev'd in part and remanded*, 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989).

■ To avoid sanctions under Rule 9011, the signer must do a reasonable inquiry into both the facts and law. A signer is not liable for sanction if there is some factual basis for the allegations, even if the allegations are ultimately disproved. *First Nat'l Bank & Trust Co. v. Hollingsworth*, 931 F.2d 1295, 1309 (8th Cir.1991) (no sanctions even though directed verdicts ultimately issued in favor of moving parties); *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 290 (3d Cir.1991) (no sanctions because there was a "reasonable, albeit tenuous, factual basis" for the counterclaim); *Davis v. Carl*, 906 F.2d 533, 538 (11th Cir.1990) (while the facts basis surrounding the filing were weak, the

---

point is obscure, though, even an absurd argument may not be sanctionable, because a "reasonable" inquiry does not turn up every dusty statute and precedent. (citation omitted.)

An objectively frivolous legal position supports an inference that the signer did not do a reasonable amount of research, but an inference, no matter how impressive, is still no more than an inference. In most cases the amount of research into legal questions that is "reasonable" depends on whether the issue is

central, the stakes of the case, and related matters that influence whether further investigation is worth the costs.

How much investigation should have been done in a given case becomes a question of line-drawing, as much a matter of "fact" as is the purpose behind the paper.... *One standard [of reasonableness] is risibility—if you start laughing when repeating the argument, then it's frivolous.*

880 F.2d at 932–933 (emphasis added).

court could not find "the deliberate indifference to facts that compels a court's resort to Rule 11 sanctions). However, when there is no evidence to support the claim for relief Rule 11 sanctions must be levied. *Avirgan v. Hull*, 932 F.2d 1572, 1581–82 (11th Cir.1991); *Robeson Defense Committee v. Britt (In re Kunstler)*, 914 F.2d 505 (4th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1607, 113 L.Ed.2d 669 (1991); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 505 (9th Cir.1986) (amended complaint violated Rule 11 when no evidence supported element of claim); *Mossman v. Roadway Express, Inc.*, 789 F.2d 804, 806 (9th Cir.1986); *Albright v. Upjohn Co.*, 788 F.2d 1217, 1221 (6th Cir.1986) (complaint naming pharmaceutical company as one of several defendants despite absence of evidence against particular company is not well grounded in fact); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1196 (5th Cir. 1986); *Vista Mfg., Inc. v. Trac–4, Inc.*, 131 F.R.D. 134, 138 (N.D.Ind.1990) ("a complaint filed in sheer ignorance of the facts violates Rule 11, notwithstanding that its allegations may later by learned to be completely true."). Once a groundless statement is made, the sanctionable conduct is complete and irreversible. *qad, Inc. v. ALN Assoc., Inc.*, 1990 WL 93362, 1990 U.S.Dist. Lexis 8350 (N.D.Ill.1990) (defendant moved for summary judgment on one count, the plaintiff responded by amending the complaint to eliminate the alleged defect, but the district court nevertheless awarded defendant its cost in filing the motion that prompted the amendment); *Cullen v. Darvin*, 132 B.R. 211 (D.Mass. 1991) (sanctions for filing RICO claim in original complaint, even though RICO claim dropped from amended complaint).

■ Beyond doing a reasonable inquiry into the facts, a signer must inquire into the law. A filing need not ultimately prevail to be warranted by existing law. The relevant inquiry is whether the pleader presented an objectively reasonable argument in support of its view of what the law is or should be. *See Davis v. Carl*, 906 F.2d 533 (11th Cir.1990); *Dura Systems, Inc. v. Rothbury Invs., Ltd.*, 886 F.2d 551, 558 (3d Cir.1989) (while tenuous arguments are not sanctionable; "patently unmeritorious or frivolous" arguments demand sanctioning), *cert. denied*, 493 U.S. 1046, 110 S.Ct. 844, 107 L.Ed.2d 838 (1990); *Smith Int'l, Inc. v. Texas Commerce Bank*, 844 F.2d 1193, 1199 (5th Cir.1988) (reasonable argument required). A filing is unwarranted by existing law if it is contrary to settled precedent. *See e.g., Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1080 (7th Cir.1987); *Norris v. Grosvenor Mktg. Ltd.*, 803 F.2d 1281, 1288 (2d Cir.1986); *Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1176 (D.C.Cir.1985); *Eastway Const. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985), *modified*, 821 F.2d 121 (2d Cir.), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987) (Sanctions are merited when "it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands."); *Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir.), *cert. denied*, 479 U.S. 851, 107 S.Ct. 181, 93 L.Ed.2d 116 (1986).

■ A signer is not just confined to existing law. Indeed, Rule 9011 was never intended to "chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 483 (3d Cir.1987) (quoting the Advisory Committee Note to Rule 11 of the Federal Rules of Civil Procedure); *Local 938 v. B.R. Starnes Co.*, 827 F.2d 1454, 1458 (11th Cir.1987) ("Rule 11 is intended to deter frivolous suits, not to deter novel legal arguments or cases of first impression"). On the other hand, a signer will be sanctioned when it files a paper lacking a good faith reasonable argument for the extension, modification, or reversal of existing law. *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir. 1985), *modified*, 821 F.2d 121 (2d Cir.), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987); *Spiller v. Ella Smithers Geriatric Center*, 919 F.2d 339, 346 (5th Cir.1990) (conclusory statements contrary to current jurisprudence that are made without any support whatsoever do

not represent a good faith effort to modify existing law).

## II.

### Did Goins Perform a Reasonable Inquiry? [9]

█ Under Rule 9011, a signer is obligated, before filing, to do a reasonable inquiry into both the facts and law using this information in making a conclusion as to whether a basis, either factual or legal, exists to support the filing.

### A. What Were the Circumstances of This Proceeding?

#### 1. Goins Pro Se Status

█ While Goins proceeded throughout this case pro se, Rule 9011 "unambiguously [states] that *any signer* must conduct a 'reasonable inquiry' or face sanctions." *Business Guides*, 498 U.S. at 548, 111 S.Ct. at 932 (emphasis added); *Shrock v. Altru Nurses Registry*, 810 F.2d 658, 661–62 (7th Cir.1987) ("The fact that [the pro se party] filed the complaint without the assistance of counsel ... did not excuse him from having to investigate the factual basis of his suit."); *see Ginter v. Southern*, 611 F.2d 1226, 1227–28 n. 1 (8th Cir.1979) (Rule 11 applies with equal strength to attorneys and pro se litigants); *In re 1801 Restaurant, Inc.*, 40 B.R. 455, 457–58 (Bankr. D.Md.1984) ("Pro se litigants have the same duties and obligations as attorneys under [Rule] 11, no more and no less."). Thus, one appearing pro se has "no impenetrable shield ... [and] has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir.1986). On the other hand, a pro se signer is allowed greater latitude with respect to the reasonableness of their legal theories than attorneys. Indeed, "a layman cannot be expected to realize as quickly as a lawyer would that a legal position

has no possible merit, and it would be as cruel as it would be pointless to hold laymen who cannot afford a lawyer ... to a standard of care that they cannot attain even with their best efforts." *Bacon v. American Fed'n of State, County and Mun. Employees*, 795 F.2d 33, 35 (7th Cir. 1986); *Sayer v. Tarnow*, 1990 WL 134875, 1990 U.S.Dist.Lexis 12057 (S.D.N.Y.1990) ("the court may consider the special circumstances of litigants who are untutored in the law."). The determination of whether a pro se filer has used its best efforts in a particular situation will, of course, be dependent upon the particular facts including the pro se's legal expertise and experience and the difficulty of the legal question the pro se filer is faced with.

#### 2. What Level of Legal Expertise and Experience did Goins Possess?

Along with Goins' pro se status, I must consider his legal expertise and experience. *See, e.g., Business Guides*, 498 U.S. at 550–51, 111 S.Ct. at 933; *Flournoy v. Kelly*, 840 F.2d 16 (6th Cir.1988) (unpublished disposition); *Nesmith v. Martin Marietta Aerospace*, 833 F.2d 1489, 1491 (11th Cir. 1987); *Roberts v. Walter E. Heller & Co.*, 1986 WL 10383 (N.D.Ill. Sept. 15, 1986); *Cornett v. Manufacturers Hanover Trust Co.*, 684 F.Supp. 78, 80 (S.D.N.Y.1988) (pro se plaintiffs acquired legal skill through their three previous suits against same defendants); *Johnson v. U.S.*, 607 F.Supp. 347, 349 (E.D.Pa.1985); *Gipson v. Rosenberg*, 797 F.2d 224, 226 (5th Cir.1986), *cert. denied*, 481 U.S. 1007, 107 S.Ct. 1633, 95 L.Ed.2d 206 (1987); *Vester v. Murray*, 683 F.Supp. 140, 142 (E.D.Va.1988) (pro se party "has ... shown an impressive knowledge of the law"); *Heimbaugh v. City & County of San Francisco*, 591 F.Supp. 1573, 1577 (N.D.Cal.1984); *Fredrick v. Clark*, 587 F.Supp. 789, 794 (W.D.Wis. 1984); *Westridge v. Allstate Ins. Co.*, 118 F.R.D. 617, 621 (W.D.Ark.1988) (pro se parties holding themselves out "as a person

---

9. While the "[bankruptcy] court need not make detailed factual findings and legal conclusions on every item of evidence presented to it ..." when sanctioning a party under Rule 9011 of the Federal Rules of Bankruptcy Procedure *See*

*E.E.O.C. v. Milavetz & Assoc., P.A.*, 863 F.2d 613, 614 (8th Cir.1988) (citation omitted), due to the contentious nature of this proceeding and my steadfast belief that sanctions are warranted, I have made detailed findings.

with knowledge in the ways of the law" should be treated that way when considering sanctions).

Goins is a skilled and resourceful person who appeared throughout the case educated, articulate and experienced in the ways of the business community and the court. Beyond displaying acute common sense and intellect, it is clear that Goins had better than a lay person's understanding of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, the Federal Rules of Appellate Procedure and the judicial system as a whole. Indeed, Goins appeared throughout this case and filed eight separate documents with this court. Specifically, with the aid of his brother, a licensed attorney, and a "book" on bankruptcy, Goins filed a Notice of Proof of Claim, an Objection of Claimant & Motion for Stay of Approval of Trustee's Motion & Declaratory Relief, a Motion to Quash, a Motion to Strike, a Motion for Declaratory Ruling, an Objection to Amended Notice & Trustee's Motion for Approval of Sale of Substantially all Assets of Estate . . ., an Objection to Motion to Approve Assumption and Rejection of Executory Contracts, a Motion to Strike Trustee's Motion Under 502 and an Objection to Trustee's Objection to Notice of Proof of Claim. . . ." All the motions were properly captioned, signed, verified and properly served. The motions also contained argument, legal terms of art and citation to United States Code, the Bankruptcy Rules, the Code of Federal Regulations, Minnesota Statutes, Congressional Acts and the United States Constitution.

Illustrative of Goins' proficiency is his proof of claim. While the proof of claim was not perfect, Goins did properly caption it noting that he was proceeding *pro se* and that the November 30, 1988 Letter Agreement amounted to an "executory contract." Goins also advised the court of the existence of a suit pending before the United States Court of Appeal in the District of Columbia Circuit. A verification and certificate of service were attached.

By filing the proof of claim, Goins illustrated several significant things. First, Goins displayed an understanding of a creditor's rights in bankruptcy; rights that most non-lawyers do not understand. Second, Goins illustrated his resourcefulness. Goins learned what needed to be filed to preserve his alleged rights and the contents of the filing. Goins then typed his proof of claim which laid out his basis for his claim and filed it with this court. This is not a simple task. What Goins accomplished took research, intellect and tenacity beyond that of your common lay person.

Another example of Goins' understanding of the law is his "Objection of Claimant & Motion for Stay of Approval of Trustee's Motion & Declaratory Relief" filed with this court. The motion was properly captioned, verified, signed and contained a certificate of service. The contents of the filing however, are even more telling. In the filing, among other things, Goins asserts that he is .moving pursuant to 28 U.S.C. § 2201; that he has a claim under 11 U.S.C. § 101(4) and that he has a "first priority claim on the assets of the Debtor"; that a constructive trust should be imposed; that the trustee has possibly violated 47 CFR § 73.3613 and 18 U.S.C. § 151 and that relief should be granted pursuant to the "regulatory requirements of Section 362 of the Code. . . ." Again, this was clearly the work of a person who had taken the time to learn "the language of the law," do legal research and cite law which Goins felt was applicable. *See Gipson*, 797 F.2d at 226 (treating citation to case law as evidence of an ability to perform legal research and understanding of the law), *cert. denied*, 481 U.S. 1007, 107 S.Ct. 1633, 95 L.Ed.2d 206 (1987).

Beyond his filings, Goins has been served with opposing pleadings, motions and complaints. These papers contained citation and persuasive legal argument. Simply, Goins not only possessed the skill to perform minimal legal research, he also had examples of what a filing should consist of.

Goins' knowledge and experience reaches beyond this court. Indeed, Goins has started a § 302A action in the Minnesota State Court has appeared in the United States District Court on several appeals. Goins

has also brought actions before the Federal Communications Commission and the United States Court of Appeals in the District of Columbia Circuit.

Goins is clearly a skilled person. Goins has repetitively displayed exceptional tenacity, knowledge, awareness, resourcefulness and intellect. Goins has cleverly used these skills to navigate through this case. I cannot ignore Goins' ability. I must judge Goins papers with his legal experience and expertise in mind.

### 3. What was the Complexity of the Legal and Factual Issues Raised in Goins' Filings?

Last, in addition to considering Goins' pro se status and his experience and expertise, I must consider the complexity of the legal questions that Goins was faced with. *See* Advisory Committee Note to Rule 11 of the Federal Rules of Civil Procedure, 97 F.R.D. 198, 199 (1983); *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 875 (5th Cir.1988) (*en banc*); *Brown v. Federation of State Medical Bds. of the U.S.*, 830 F.2d 1429, 1435 (7th Cir.1987) (commenting that one of the reasonable inquiry factors is "the complexity of the facts ... [when doing] a sufficient pre-filing investigation").

Here the legal issues and facts were simple.[10] Indeed, the threshold issue was whether the November 30, 1988 Letter Agreement was enforceable. This was purely a factual determination that could have been resolved by contacting the parties to the Letter Agreement. Goins personally knew the parties of the Letter Agreement and how to contact them. A simple series of phone calls would have been enough.

### B. Was Goins' Inquiry Reasonable?

■ To avoid sanctions under Rule 9011, the signer, after a reasonable inquiry, must believe that each claim for relief was (1) well grounded in fact and (2) warranted by existing law or a good faith argument for the extension, modification, or reversal

of existing law. *Frantz v. U.S. Powerlifting Federation*, 836 F.2d 1063, 1067 (7th Cir.1987). Here, however, none of the claims for relief are supported by a reasonable inquiry.

### 1. Was Goins' Proof of Claim Supported by a Reasonable Inquiry?

### a. Did Goins Perform a Reasonable Pre-Filing Factual Inquiry?

Goins violated Rule 9011 by signing and filing his factually unsubstantiated proof of claim. First, Goins failed to perform a reasonable inquiry into the status of the Letter Agreement. Frankly, during the hearing on sanctions, Goins admitted the same. Indeed, Goins unequivocally testified that he did not performed a pre-filing factual or legal inquiry. Without doubt, Goins breached his duty to this court violating Rule 9011. *See Chapman & Cole*, 865 F.2d at 684 n. 11 (every signer has an affirmative duty to explore readily available factual avenues).

Goins' violation is troubling; Goins could have easily fulfilled his responsibility. Goins believes the Letter Agreement gives rise to his claim. The Letter Agreement was signed by representatives of the debtor, Red River Broadcasting and Halcomm. Goins knew this and who the individual representative were. However, Goins ignored these facts and his duty to perform the costless and effortless task of calling the signatories of the Letter Agreement or their representatives. Goins' ignorance and reliance on personal knowledge and perception is no excuse to filing a document devoid of a factual basis. *See Shrock v. Altru Nurses Registry*, 810 F.2d 658, 661–62 (7th Cir.1987). Such "a shot in the dark is a sanctionable event ..." *Vista Mfg., Inc.*, 131 F.R.D. at 138.

Beyond failing to perform a pre-filing factual inquiry into the status of the Letter Agreement, Goins has not established a single fact which would suggest he had a claim against the debtor. Frankly, all the uncontested facts are to the contrary. If

---

**10.** If anyone made the issues appear difficult it was Goins. Goins' filings are illustrative of overblown creativity which made fundamental and simple issues seem complex.

Goins has a claim it is against Halcomm, not the debtor. Goins is a dissenting shareholder in Halcomm, a corporation which was a signatory to the Letter Agreement. Goins was not a signatory to the Letter Agreement nor an agent of a signatory. If Goins has a cause of action it is against Halcomm, not the debtor. While I understand Goins is upset with Halcomm, I do not understand how he thought he had a claim against the debtor. There is not a single fact that would support Goins' claim against the debtor. All the facts are to the contrary. That being the case, I am left with only one conclusion; Goins violated Rule 9011. *See Van Berkel v. Fox Farm & Rd. Mach.*, 581 F.Supp. 1248, 1249–50 (D.Minn.1984) (a filing is not well grounded in fact if it is contradicted by uncontested contrary evidence that should have been known to the signer); *see also Lloyd v. Schlag*, 884 F.2d 409, 412–13 (9th Cir.1989); *Robeson Defense Committee v. Britt* (*In re Kunstler*), 914 F.2d 505, 516 (4th Cir. 1990) (filing "unsupported by *any* information obtained prior to filing, or allegations based on information which minimal factual inquiry would disprove, will subject the author to sanctions.").

**b. *Did Goins Perform a Reasonable Pre-Filing Legal Inquiry?***

Second, even if the Letter Agreement were enforceable and subsequently breached, Goins still failed to perform a reasonable inquiry into the law. Goins posits this rule of law: Dissenting shareholders in Corporation X have direct claims against Corporation Y when both corporations are party to a contract. The argument is objectively meritless. Had Goins simply read the section of the Code he cited, performing a reasonable inquiry, he would have concluded the same.

Section 101(5) of the Code provides:

"claim" means—

(A) *right to payment*, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed,

undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a *right to payment*, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

11 U.S.C. § 101(5) (emphasis added). Simply stated, to have claim you must have a right to payment. Whether a person has a right to payment is usually a matter of state law. However, Goins has not provided one oral or written citation to state law to support his proposition. This makes sense; a survey of the law reveals no support for Goins' position. Goins is a dissenting shareholder in Halcomm. Goins does not hold a valid claim against the debtor.

Goins is a smart person with experience in business and the law. Throughout this case, Goins has displayed an acute awareness of corporate law and in particular shareholder's rights. It is fundamental corporate law that shareholders have rights in and against the corporation in which they hold shares. Section 302A of Minnesota Statutes rings of this message. Section 302A also addresses dissenting shareholder rights. Nowhere, however, does Section 302A give dissenting shareholders a right to payment from another unrelated corporation. This conclusion could have been easily drawn by Goins on his own. All Goins needed to do was pick up and read Section 302A of Minnesota Statutes or Minnesota Statutes Annotated or Am.Jur., a legal encyclopedia, or any other source discussing shareholder's rights and read the applicable parts. These sources are both readily available to the public in either law [11] or public libraries and are full of citation to case law and commentary discussing shareholder's rights. However, Goins admittedly did not look at these sources or for that matter perform any legal or factual inquiry.

---

**11.** There at least four law libraries open to the public. Hennepin County Law Library, William Mitchell College of Law Library, University of Minnesota Law Library and Hamline Law Library. These libraries are fully staffed.

Goins leaves with only one conclusion; I must impose sanctions. *See Mars Steel Corp.*, 880 F.2d at 937 (admittedly failing to perform "even a smidgeon of research" is per se violative of Rule 11); *Thornton v. Wahl*, 787 F.2d 1151, 1153 (7th Cir.1986); *see also Farmer v. Wilkinson*, Civ. No. 4–85–1448, 1986 WL 3960 (D.Minn. March 20, 1986) (pro se party sanctioned for failure to establish proper standing).[12]

**2.** ***Did Goins Perform a Reasonable Inquiry Before Filing His Objection of Claimant & Motion for Stay of Approval of Trustee's Motion & Declaratory Relief?***

Goins, supporting his motion, testified that he had done "a little" legal research; had consulted his brother, an attorney; and had reviewed a book on bankruptcy. As I have previously stated, Goins is a resourceful, well educated person with a solid understanding of law and common sense. Goins has the ability to read statutory language, look up case law in reporters and to think analytically. However, I am not convinced that Goins exercised his intellect when preparing this motion violating Rule 9011 seven separate times.

**a.** ***Did Goins Perform a Reasonable Pre-Filing Factual Inquiry Before Asserting He Had a First Priority Claim?***

Goins failed to perform a reasonable factual inquiry before asserting he had a first priority claim on the assets of the debtor. As I previously concluded, Goins failed to perform a "reasonable inquiry" into whether he had a claim against the debtor. Notwithstanding that violation and even if

**12.** Frankly, Goins' own December 30, 1991 deposition testimony supports my conclusion that he did not have a legal or factual basis for his claim.

Q. You don't have any legal basis for the claim that you are making here—
A. The constitution is my legal basis for all of may rights. That's what this county is all about. That is my basis for all of my rights, the Constitution.
Q. Are you telling me that the only basis for asserting these rights, so called rights that you have is the Constitution.
A. No, I—
Q. You have no other legal equitable grounds?
A. I have legal and equitable rights as well. Those also have to be constitutionally bound.

A. I think I have a claim and interest. I think I have an equitable right to payment.
Q. What I'm trying to find out is: Are there any other facts which you rely on which would give rise to your legal claims, whatever they may be?
A. I think a lot of this could be discoverable over at Dorsey & Whitney. I think a lot of this could be discoverable over at Lindquist & Vennum and I have already—this had been asked and I answered it. I think this is repetitive. It's overly burdensome. I object to the question, sir.
Q. All I am asking you is: Are there any other facts than your status as a shareholder which you're basing your legal claim to the assets of KTMA?
A. Are there any other? I think I've already given you the pleadings. I think—
Q. Asks for a yes or no answer.
A. I object to the question. I've already answered it.
Q. So there are no other facts?

A. Objection.

Q. My original question, Mr. Goins, was other then the pleadings and other then the facts as I've recited them with respect to your shareholder status—
A. Yes, sir.
Q. —are there any facts that we don't know about or that you have knowledge of?
A. I'm not holding out on you, sir.

Q. What I'm trying to understand is what Halcomm's interest or what you assert Halcomm's interest is in KTMA?
A. They merged. They're partners. They're one in the same.
Q. Assuming that to be correct, that gives them the status of a shareholder in KTMA or a partner in KTMA?
A. I don't know.
Q. If you don't know then how can you assert an interest through them?
A. I'm a dissenting shareholder. I have an equitable right to be paid from that corporate action.
Q. As to Halcomm. What I'm trying to determine—
A. I also have an equitable right.
Q. —is how you are asserting your shareholder interests assuming even that Halcomm and KTMA merged? Assuming that that actually happened as you said it did, what do you believe Halcomm's interest in KTMA is? As owner?
A. I have no idea.
Q. You have no idea of the legal basis that you're asserting a claim—
A. I—I—

Goins had a claim against the debtor, Goins' claim still violated Rule 9011. Goins did not point to a single fact nor can I find one that could support a claim to a priority claim.

**b. *Did Goins Perform a Reasonable Pre-Filing Inquiry into the Law Before Asserting He Had a First Priority Claim?***

Application of the Code is telling; Goins' assertion that he has a first priority claim was not warranted by existing law or a good faith extension. Section 507 of the Code,[13] entitled "Priorities," reveals that "administrative expenses" are first priority claims. As the plain text of section 507 tells me, administrative expenses are defined in section 503. Turning to section 503,[14] I find no textual or other support for Goins' assertion he had a first priority claim, i.e. an administrative expense claim. Goins does not nor has he ever held an administrative expense claim. Similarly, Goins clearly did not have a claim falling into any of the other priority categories of section 507.[15] Goins could have easily concluded the same had he just given sections 507 and 503 a cursory reading; no analysis or statutory interpretation is required. The statutes are clear on their face. However, it is apparent from the argument, Goins chose not to give reasonable, if any, consideration to what sections 507 and 503 say or what a first priority claim is. Goins

claim is patently unmeritorious and frivolous leaving me no choice but to order sanctions under Rule 9011. *Dura Systems, Inc. v. Rothbury Invs., Ltd.*, 886 F.2d 551, 558 (3d Cir.1989) (while tenuous arguments are not sanctionable; "patently unmeritorious or frivolous" arguments demand sanctioning), *cert. denied*, 493 U.S. 1046, 110 S.Ct. 844, 107 L.Ed.2d 838 (1990); *Smith Int'l, Inc. v. Texas Commerce Bank*, 844 F.2d 1193, 1199 (5th Cir.1988) (reasonable argument required); *Eastway Constr. Co.*, 762 F.2d at 254 (Rule 11 is violated where "it is patently clear that a claim has no chance of success under the existing [law] ..."); *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1080 (7th Cir.1987) ("wacky" legal arguments are sanctionable), *cert. dismissed*, 485 U.S. 901, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988).

**c. *Did Goins Perform a Reasonable Pre-Filing Factual Inquiry Before Moving for the Imposition of a Constructive Trust?***

Further, Goins moved the court for the imposition of a constructive trust. There is no factual basis for this claim. Simple pre-filing research would have revealed the same to Goins.

Goins failed to provide a single substantiated fact which would support the ordering of a constructive trust. As previously discussed, all Goins has is an unsubstantiated and incorrect belief that he has a claim

---

**13.** Section 507, in relevant part, provides:
**Priorities**
(a) The following expenses and claims have priority in the following order:
 (1) First, administrative expense allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28.
11 U.S.C. § 507.

**14.** Section 503 is easy to read and understand providing that administrative expenses are:
 (1)(A) the actual, necessary costs and expense of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;
 (B) any tax ...; and
 (C) any fine, penalty, or reduction in credit relating to a tax of a kind specified in subparagraph (B) of this paragraph ...;
 (2) compensation and reimbursement awarded under section 330(a) of this title;
 (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection ...

 (4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection ...
 (5) reasonable compensation for services rendered by an indenture trustee in making a substantial contribution in a case under chapter 9 or 11 of this title, based on time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title; and
 (6) the fees and mileage payable under chapter 119 of title 28.
11 U.S.C. § 503.

**15.** Those categories include "gap" claims, wages and related claims, employee benefit plan contributions, certain claims against farmers and fishermen, deposits, taxes and certain federal insured deposit commitments.

against debtor. Unfortunately, factual speculation also surrounds Goins' request for a constructive trust. Goins did not point to a single fact that even under the most lenient standards, would require the imposition of a constructive trust. Frankly, all of Goins' statements were factually unsubstantiated beliefs that a constructive trust should be imposed. I will not allow conjecture to satisfy the requirements of Rule 9011. *See Patterson v. Aiken,* 111 F.R.D. 354, 357 (N.D.Ga.1986) (citing *Williams v. Duckworth,* 617 F.Supp. 597 (N.D.Ind.1985)); *Cavallary v. Lakewood Sky Diving Center,* 623 F.Supp. 242 (S.D.N.Y.1985).

### d. *Did Goins Perform a Reasonable Pre–Filing Inquiry Into the Law?*

Goins has also failed to pin down a legal basis for the imposition of a constructive trust. Not a single source was cited nor does Goins set forth an argument for the extension of law. The only inference I can draw is that Goins failed to do a reasonable inquiry. This conclusion is unfortunate; Goins' pre-filing inquiry could have been performed easily and quickly. Goins could have simply asked his attorney brother about constructive trusts or consulted a legal encyclopedia such as Am.Jur. or C.J.S. However, simply reading the motion leads me to the inference that Goins performed very little if any research on the topic of constructive trusts.

I took the time and went to Am.Jur. I found 37 pages of easy to read text chock full of citation discussing constructive trusts. *See* 76 Am.Jur.2d *Trusts* §§ 200–239 (1992). Finding the sections discussing constructive trusts was not difficult; the index directed me to the exact sections. While Am.Jur. is a legal encyclopedia, Encyclopedia Britannica research skills apply. Research skills usually obtained in high school.

Goins' skill and intellect far exceeds that of a High School graduate. However, Goins failed to put his keen skill to work, leaving me with mere unsupported conclu-

sory assertions. It is a fair conclusion that Goins heard the term "constructive trust" somewhere, thought it sounded good and threw it in. "Such unsupported and inaccurate assertions are precisely the conduct Rule 11 sanctions." *O'Rourke v. City of Norman,* 640 F.Supp. 1451, 1469–70 (W.D.Okla.1986) (citation omitted), *rev'd on other grounds,* 875 F.2d 1465 (10th Cir.) *cert. denied,* 493 U.S. 918, 110 S.Ct. 280, 107 L.Ed.2d 260 (1989). Clearly, Goins violated Rule 9011 here. *See Westfield Partners, Ltd. v. Hogan,* 744 F.Supp. 189 (N.D.Ill.1990) (movement sanctioned because existing law showed that movant had no claim and no cases were cited to support theory advanced); *Alford v. Sullivan,* 751 F.Supp. 1232, 1234 (E.D.Tex.1990) (same); *FDIC v. Horn,* 751 F.Supp. 186, 190 (D.Colo.1990) (same); *Allison v. Dugan,* 737 F.Supp. 1043, 1050–51 (N.D.Ind.1990) (same).[16]

### e. *Did Goins Perform a Reasonable Pre–Filing Factual Inquiry Before Asserting the Trustee Violated Section 73.-3613 of the Code of Federal Regulations?*

Goins has also violated Rule 9011 by his assertion that there was "direct and collateral evidence that the Trustee and/or certain parties in interest in this proceeding may have failed to comply with or sought to evade the requirements of 47 CFR § 73.-3613 and other Rules of the Federal Communication Commission required of licensees." Not even a shred of factual support exists. I cannot even infer that the trustee violated 47 CFR § 73.3613. Again, there are no facts to support Goins' claim against the debtor or standing to assert a violation of 47 CFR § 73.3613. Notwithstanding that, Goins failed to factually substantiate what "direct [or] collateral [factual] evidence" existed to support his statement. All Goins provided were bald assertions of fact he believed to exist. Bald conclusory statements of fact hardly support the weight of Rule 9011's requirement that a claim be "well grounded in fact."

---

**16.** While all of these cases involve attorneys, they are equally applicable in this case. Given Goins' exceptional understanding of the law, his vast experiences and the unreserved ear of his attorney brother, it was reasonable to expect citation to sources.

**f.** ***Did Goins Perform a Reasonable Pre-Filing Inquiry into the Law Before Asserting that the Trustee Violated Section 73.3613 of the Code of Federal Regulations?***

Goins' claim for relief under 47 CFR § 73.3613 is also legally deficient. While Goins failed to cite with specificity which subsection was violated, I read section 73.-3613 of the Code of Federal Regulations. Applying the statute to the record facts, I believe Goins rather obtuse argument boils down to: The regulation was violated by the trustee's failure to file a copy of the Letter Agreement with the F.C.C. *See* 47 CFR §§ 73.3613(b)(1)–(6). Section 73.3613 of the Code of Federal Regulations provides that:

> [e]ach licensee ... shall file with the FCC copies of the following contracts, instruments and documents ... within 30 days of execution thereof."

47 CFR § 73.3613. While the parties to the Letter Agreement may have violated the regulation by not filing the abandoned Letter Agreement with the FCC, the trustee did not. All the uncontroverted evidence is that the trustee did not know about the Letter Agreement until it was raised by Goins. Once the trustee was notified, a copy of the Letter Agreement was sent to the F.C.C.

Notwithstanding the trustee's actions, Goins' argument is still meritless. According to uncontroverted facts the Letter Agreement was abandoned sometime in late 1988. Abandoned agreements are not required to be filed with the F.C.C. *See* 47 CFR § 73.3613.

However, whether the agreement was abandoned is not determinative; Goins' claim for relief against the trustee still fails. Goins was not a party to the Letter Agreement nor was he an agent of a party. Rather, Goins is a dissenting shareholder in Halcomm, a party to the Letter Agreement. Nothing more. Thus, while Goins may have been damaged by the circumstances surrounding the Letter Agreement, his claims are against Halcomm, not the debtor. Had Goins performed a reasonable in-

quiry into the status of the Letter Agreement and 47 CFR § 73.3513, he would have concluded the same. But, Goins chose not to perform a reasonable inquiry, if an inquiry was made at all.

**g.** ***Did Goins Perform a Reasonable Pre-Filing Legal Inquiry Before Asserting that the Trustee Had Violated Title 18, Section 151 of the United States Code?***

Further violating Rule 9011, Goins insists that the debtor conspired with other licensees in violation of 18 U.S.C. § 151 et seq. This assertion confuses me. Again, Goins has dipped into his bag of obscure latin terms. Looking at the definition is no help. *Et seq.* is an "abbreviation for *et sequentes* or 'and the following'." *Black's Law Dictionary* 553–54 (6th ed. 1990). So, do I consider section 151 of Title 18 alone? Do I consider section 151 and all of the sections that follow? I do not know.[17] Goins gave me no direction or legal argument. I am left in the difficult and uncomfortable position of determining exactly what he believes his cause of action to be. A determination, frankly, I am unwilling to make. Goins was responsible to communicate his proposition in a reasonable manner. A signer cannot expect that opposing council or the court will do its legal research. The onus is on the signer. When that duty is not fulfilled, like here, the signer violates Rule 9011.

Simply, Goins has failed to factually and legally substantiate every claim for relief. Having violated Rule 9011 seven separate times, Goins has left me with no other choice. I must order sanctions.

**3.** ***Did Goins Perform a Reasonable Inquiry Before Filing His Motion to Quash?***

Goins' signature on his filed motion to quash violated Rule 9011.

**a.** ***Did Goins Perform a Reasonable Pre-Filing Inquiry into the Law Before Asserting That the Subpoena Should be Quashed Because the Deposition Answers Relate to Matters on Appeal?***

Goins asserted that the subpoena should

---

**17.** The use of a term like *et seq.* is neither

helpful nor impressive.

be quashed because the deposition [18] would contain questions on matters pending before the U.S. Court of Appeals for the District of Columbia Circuit and other matters being appealed at the F.C.C. Goins does not cite a single shred of support for his proposition. Indeed, a survey of the law reveals no support exists. Frankly, the argument makes no sense. Deposition testimony is bound to be duplicative where there are related matters before different courts or agencies. This is almost common sense. However, such sense did not strike Goins. While absence of common sense does not violate the plain language of Rule 9011, failure to perform a reasonable inquiry does. I have read the argument and given it thought. Each time I come to the same conclusion; Goins did not performed a pre-filing inquiry into the law before "drop[ping] [his] paper[ ] into the hopper ... insisting that the court or opposing council undertake bothersome factual and legal investigation" *Mars Steel Corp.*, 880 F.2d at 932.

**b. Did Goins Perform a Reasonable Pre-Filing Factual Inquiry Before Claiming That the Subpoena was an Effort to Avoid Superior Court Jurisdiction?**

Goins next asserts that the subpoena was an effort "to avoid the jurisdiction of a superior court...." Goins fails to factually disclose how the subpoena was an effort to avoid jurisdiction. In fact, the record is devoid of any facts which could have led a reasonable person with Goins' experience, knowledge and resources to believe that a deposition could somehow effect jurisdiction in the District of Columbia Circuit. There are no facts that the trustee in anyway sought to disturb the proceedings in the District of Columbia Circuit court. All the facts are to the contrary. The trustee objected to Goins' claim. Contesting Goins' claim, the trustee was then entitled to do discovery. *See* Fed.R.Bankr.P. 9014, 7026, 7028–7032. The trustee's deposition of Goins was purely an investigative measure. The trustee's action was in no way an effort to effect appellate jurisdiction.

**c. Did Goins Perform a Reasonable Pre-Filing Inquiry into the Law Before Claiming the Subpoena was an Effort to Avoid Superior Court Jurisdiction?**

Moreover, Goins' assertion is legally deficient. Goins cites no authority for his proposition. After all, it is difficult to cite what does not exist. The taking of a deposition cannot usurp appellate court jurisdiction. Again, the argument is so strained and obtuse, the only logical inference to be drawn is that no pre-filing inquiry was done. *See Mars Steel Corp.*, 880 F.2d at 932.

**d. Did Goins Perform a Reasonable Pre-Filing Factual Inquiry Before Claiming that the Subpoena was a Retaliatory Action?**

Goins has also failed to factually substantiate how the subpoena was a "retaliatory action in breach of the trustee's duties under section 362." If anything, just the opposite is true; the trustee was properly performing his duties. As I previously stated, the trustee sought to depose Goins in order to investigate his claim and, in particular, the status of the Letter Agreement. There is no evidence to the contrary. Goins did not raise a single fact to support even an inference that the trustee acted improperly or properly with evil motive. Had Goins just stepped back a moment and thought about what the subpoena was purporting to accomplish, he would have concluded the same. Yet, Goins chose not to allow common sense to dictate his decision, firing once again a factually misguided missile requiring me to find that Rule 9011 was violated.

**e. Did Goins Perform a Reasonable Pre-Filing Inquiry Into the Law Before Claiming That the Subpoena was a Retaliatory Action?**

The violation comes to life looking at Goins' failure to perform a pre-filing inquiry into the law. Under section 704 of the

---

18. The trustee had objected to Goins' claim and was entitled to do discovery. *See* Fed.

R.Bankr.P. 9014, 7026 and 7030.

Code, the trustee has an affirmative duty to investigate proofs of claim and object to their allowance. *See* 11 U.S.C. § 1106; [19] 11 U.S.C. § 704(5).[20] Thus, all the uncontested evidence is that the trustee was accurately performing his duties investigating the Goins' claim; there was nothing retaliatory about the trustee's actions. Had Goins simply read these sections of the Code, he would have concluded the same.

 Besides failing to consider the relevant Code sections, Goins fails to cite any authority other than section 362 for his proposition. Section 362 of the Code is entitled "Automatic stay." The automatic stay stops actions against the debtor not actions originally brought by the debtor, the trustee or debtor-in-possession. *See Carley Capital Group v. Firemens' Fund Ins. Co.,* 889 F.2d 1126, 1127 (D.C.Cir.1989). This is fundamental. This proposition is found in nearly every resource dedicated to bankruptcy. But, even if Goins failed to find a resource among the quantum of material available, a cursory reading of section 362 by Goins would have revealed that the trustee had not violated the "automatic stay." Section 362 does not explicitly assign the kind of duties Goins contends were breached.[21] Given the clarity of the Code sections involved and the carelessness of the arguments presented, the only inference is that Goins failed to even summarily read Code sections 1106, 704 and 362. Goins, failing to read the sections supporting or relating to his motion has violative of the reasonable inquiry prong of Rule 9011.

**f. Did Goins Perform a Reasonable Pre-Filing Factual Inquiry into his Claim that the Trustee Violated Rule 6006(b) of the Federal Rules of Bankruptcy Procedure?**

Last, Goins believed that the subpoena was attempting to circumvent Rule 6006(b) of the Federal Rule of Bankruptcy Procedure. Again, all the facts are to the contrary establishing that the trustee strictly complied with Rule 6006(b) of the Federal Rules of Bankruptcy Procedure. The trustee sought to depose Goins as a part of his investigation into his claim which was based on the Letter Agreement, a possible executory contract. If Goins had further questions regarding the assumption or rejection of the Letter Agreement he could have very easily contacted the trustee or his attorneys. However, Goins never contacted the trustee or his attorneys. Had Goins made contact with the trustee, he probably would have learned of the trustee's plans to reject the Letter Agreement as an executory contract.[22] However, Goins chose not to contact the trustee, or for that matter anyone regarding the assumption or rejection of the Letter Agreement as an executory contract. As Goins knows by now, ignorance is no excuse to filing a factually infirm motion. *Vista Mfg., Inc.,* 131 F.R.D. at 138.

**g. Did Goins Perform a Reasonable Pre-Filing Inquiry into the Law Before Claimed that the Trustee Violated Rule 6006(b) of the Federal Rules of Bankruptcy Procedure?**

Even though Goins failed to cite authority for his proposition, his citation to Rule 6006(b) suggests that he does not suffer

**19.** Under the Code:

> (a) A trustee shall—
> (1) perform the duties of a trustee specified in sections 704(2), 704(5), 704(7), 704(8), and 704(9) of this title....

11 U.S.C. § 1106.

**20.** Section 704(5) provides that the trustee shall "if purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper." 11 U.S.C. § 704(5).

**21.** In a general sense, the trustee has a duty to protect and preserve the estate. Thus, the trust-

ee has a duty to oppose any motion for relief from the automatic stay when the it feels that such relief is not merited.

**22.** The trustee filed his motion to approve his rejection of executory contract the same day Goins filed his motion to quash. Thus, it would appear that at some point prior to Goins motion to quash, the trustee had decided, pursuant to Rule 6006 and 9014 of the Federal Rules of Bankruptcy Procedure, to bring a motion to reject the Letter Agreement as an executory contract. Had Goins contacted the trustee or his attorneys, he would have known the same.

from an inability to do research. What it does suggest, however, is that Goins, as many time before, decided to take an ostrich-like tactic of pretending that the Rule says something it does not. Rule 6006(b) of the Federal Rules of Bankruptcy Procedure provides:

> A proceeding by a party to an executory contact or unexpired lease in a ... chapter 11 reorganization ... to require the trustee, ... to determine whether to assume or reject the contract or lease is governed by Rule 9014.

Fed.R.Bankr.P. 6006(b). How can the taking of an investigative deposition by the trustee be an action "seeking to avoid a required action under Bankruptcy Rule 6006(b) ... in aid for an improper effort to effect a nonjudicial bankruptcy discharge of an equitable interest against other parties including the purported secured lender International or Investment Limited Partnership." I have a pretty creative imagination, but Goins' legal argument makes no sense to me. I cannot even stretch the argument to fit within the express language of the statute.

Looking at each allegation and the motion as a whole, only one conclusion can be reached: Goins signed and filed his motion to quash in violation the reasonable inquiry prong of Rule 11.

### 4. *Motion to Strike Trustee's Unauthorized Motion to Approve Rejection of Executory Contract.*

### a. *Did Goins Perform a Reasonable Pre-Filing Inquiry into the Facts and Law Before Claiming the Trustee Breached his Duty by not Filing with the F.C.C.?*

In the motion to strike, Goins asserts, among other things, that the trustee breached his duty by not filing a copy of the Letter Agreement with the F.C.C. As previously discussed, Goins did not perform a reasonable factual or legal pre-filing investigation before claiming the trustee violated 47 CFR § 73.3613. That conclusion applies here.

### b. *Did Goins Perform a Reasonable Pre-Filing Factual Inquiry Before Claiming that the Trustee's Motion Should be Struck Since ILP holds a Security Interest in the Letter Agreement?*

Goins' next assertion also fails the reasonable inquiry standard. Goins asserts that Investors Limited Partnership holds a security interest in the Letter Agreement. Goins does not qualify why this matters or what rights ILP may have because of their secured creditor status. Beyond this vagueness, Goins again relies on the Letter Agreement. As previously concluded, such reliance in itself violates Rule 9011. However, this violation is not the end of Goins' problems. Even if ILP has a security interest in the Letter Agreement, no facts exist to support Goins' implied claim of standing. ILP would have had standing to object, Goins did not. ILP chose not to object. Rather, ILP supported the sale of the debtor's assets. Had Goins contacted ILP or the trustee he probably would have learned the same. However, Goins chose to make blind claims intentionally neglecting to contact anyone before signing and filing his pleading.

### c. *Did Goins Perform a Reasonable Pre-Filing Inquiry into the Law Before Claiming that the Trustee's Motion Should be Struck Since ILP Holds a Security Interest in the Letter Agreement?*

Beyond being factually infirm, Goins' third party claim has no objective basis in law. First, Goins implied claim of standing lacks an objective basis in law. Goins failed again to cite a single source to support standing or his claim. Curiously, no legal support exists. Surely a nominal amount of research or Goins' brother would have confirmed that this obviously implausible argument is beyond the bounds Rule 9011 permits. *Snyder v. I.R.S.*, 596 F.Supp. 240, 252 (N.D.Ind.1984) (courts have the right to expect pro se parties to find clearly settled law which goes directly against them).

**d.** *Did Goins Perform a Reasonable Pre-Filing Inquiry Before Claiming that the Trustee's Motion Should be Struck since Goins will Obtain Claims in Other Stations?*

Further, Goins states that if the Letter Agreement is "rejected", he is to obtain "equitable claims and interests in several Minnesota television stations." That assertion, however, is without any factual basis. The only interest Goins had at the time of the filing was in Halcomm. There are no facts to support even an inference that through rejection Goins would obtain equitable claims and interest in other entities.[23] Moreover, even if Goins' assertion was factually supported and true, it has no effect on the debtor. Equitable claim and interests in other entities are just that; claims against other entities. These claims are factually and legally insignificant to the debtor. You do not have to be an attorney to arrive at that conclusion.

**e.** *Did Goins Perform a Reasonable Pre-Filing Inquiry into the Law Before Claiming that the Trustee's Motion Should be Struck since Goins will Obtain Claims in Other Stations?*

Goins also failed to disclose what his legal basis was. Curiously, the Code does not provide for relief based on Goins' meritless assertion. Under the Code, an executory contract can be assumed or rejected. *See* 11 U.S.C. § 365. Assumption and rejection are concepts that are that arise frequently and are extensively discussed in a variety of publications, including, I am sure, Goins' "book on bankruptcy". A cursory review of these sources would have revealed that rejection may give rise to state law causes of action, not "equitable claims and interests." Goins has not cited a single source to support his position. In fact, I do not know of a legal basis for his meritless assertion. Before a pro se party appears in any court, he must understand the position he asserts. A pro se party cannot rest on meaningless legalese. Goins, however, has done just that. Had

Goins done even a cursory review of the Code or any source on bankruptcy, he would have realized how meritless his proposition was. However, Goins chose to do nothing. Goins violated Rule 9011.

**f.** *Did Goins Perform a Reasonable Pre-Filing Factual Inquiry Before Claim that this Court Lacked Jurisdiction?*

Finally, Goins states that this court has no jurisdiction to approve the rejection of the Letter Agreement if it is an executory contract. Goins argues that this court must abstain because "there is an existing state law statutory proceeding which is governed by Minnesota Statutes 302A.... [Thus, there is no federal question [as required by] 28 U.S.C. § 1334(c)(2)...." I am very disturbed by this argument. On November 4, 1992, I heard testimony that a case had been commenced in Sherburne County to determine the value of Goins' stock as a dissenting shareholder in Halcomm, Inc. To my surprise and disappointment, I later found out that the complaint was filed on October 20, 1992 against Lang, Jenson, Halcomm, and others. This unfortunately does not correspond with Goins' December 26, 1991 sworn statement that "there is an existing state law statutory proceeding." That statement was verified by Goins under penalty of perjury. However, the statement was neither true nor correct. Unless I am missing something, this amounts to perjury.

**g.** *Did Goins Perform a Reasonable Pre-Filing Inquiry into the Law Before Claiming that this Court Lacked Jurisdiction?*

Even if Goins did not perjure himself, his claim for abstention was not objectively warranted by law. Goins' alleged action under Minnesota Statutes § 302A and the debtor are unrelated.

■ Goins claims that I should have abstained pursuant to Title 28, section 1334(c)(2) of the United States Code.[24] Section 1334(c)(2) provides that:

---

**23.** On its face the argument seems to say that rejection would confer a benefit on Goins.

**24.** In the first place, the fact that abstention is permissible or required does not mean that the court lacks jurisdiction.

Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11 ... the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). Here, however, no "State law claim or State law cause of action, relat[ing] to a case under title 11" exists. Frankly, Goins' motion reveals the same. Throughout this case, Goins has plead he has rights as a dissenting shareholder of Halcomm, Inc. That may be true. However, those rights are specifically governed by Minnesota Statutes § 302A. In particular, section 302A.471 provides that:

A shareholder of a corporation may dissent from, and obtain payment for the fair value of the shareholder's shares in the event of

(b) A sale ... of all or substantially all of the property and assets of the corporation not made in the usual or regular course of business....

Minn.Stat. § 302A.471 (1992). This is as easy to read as it is to understand; Goins could go to Halcomm and ask for payment for the fair value of his shares. Plainly, the rejection of the Letter Agreement, if it was enforceable, had no direct or indirect effect on Goins' section 302A action. The plain language of section 1334(c)(2) requires a state law action "relating to a case under title 11." Goins' claim against Halcomm has nothing to do with the debtor. Section 1334(c)(2) of Title 28 is not relevant.

Again, Goins has not cited any source for his proposition. His argument is meritless. Goins should have concluded the same. Indeed, a cursory reading of section 302A and 28 U.S.C. § 1334(c)(2) would have been enough to flush this conclusion out. In the event that confusion arose, Goins could

have easily turned to his brother just as he had in the past. However, the only inference drawn from the patently frivolous argument is Goins chose to ignore or disregard legal authority. Again, Goins' claim for relief suffers from his Peter Pan mentality; Goins cannot make claims closing his eyes wishing happy thoughts. Claims for relief unsupported by a reasonable inquiry will not fly and are sanctionable under Rule 9011.

Goins' motion to strike the trustee's motion to disallow the claims filed by Goins is also violative of Rule 9011 for failing to provide a well founded factual basis. Again, Goins has failed to bring forward any facts which support his asserted claims against the debtor. This is because there are none. Again, Goins failed to meet the requirements of Rule 9011.

### 5. *Motion for Declaratory Ruling & Declaration*

After reading the compound and cryptic language contained in the motion,[25] I gather that Goins claimed that according to loan documents, Investment Limited Partnership had a security interest in the "breached" Letter Agreement and that any sale of KTMA will impair this interest. These papers again assert the Letter Agreement. As previously discussed, Goins does not have standing to raise these third party claims. Frankly, if ILP really cared, they would have raised the issue themselves. Throughout the proceeding ILP has been represented by experienced bankruptcy attorneys. Obviously, ILP does not agree with Goins. Had Goins contacted ILP or its counsel, he would have learned the same. However, the only inference that can be drawn from the facts and the pleading is that Goins chose not to inquire into the facts or law.

Goins also argues that I should determine "whether the Trustee's failure to concede Goins' claims against the estate and as being prior to or *pari passu* [26] with ILP

---

**25.** One sentence contained approximately 108 words, another approximately 95.

**26.** Inane use of latin is not impressive. "Pari passu" means: By equal progress; equably; rat-

ably; without preference. Used especially of creditors who, in marshalling assets, are entitled to receive out of the same fund without any precedence over each other. *Black's Law Dic-*

... [is] in fact an improper effort in furtherance of an illegal agreement or undertaking to complete the effectuation of an improper non-bankruptcy or bankruptcy discharge of an outstanding equitable interest or claim against the purported security interest of ILP in said November 30, 1988 'Letter Agreement'.[sic]'' Having read the argument several times and gone to *Black's Law Dictionary* I gather that Goins believes that he has a claim which should be paid before ILP's secured claim or at least paid in the same preference as ILP's claim. As previously discussed, Goins does not have a claim against the debtor let alone a secured claim in the same class as ILP's. As previously concluded, had Goins done cursory research, he would have concluded either he did not have a secured claim or that he did not have a claim at all. In either event, a reasonable inquiry would have prevented these assertions from being made.

### 6. Objection to Amended Notice & Trustee's Motion for Approval of Sale of Substantially all Assets of Estate & Motion for Approval of Assumption & Assignment of Substantially all Leases & Contracts

In this motion, Goins objects to the sale unless he is to receive "full and fair payment of his interest in the estate by virtue of his lawfully tendered and superior claim...." Again, the vagueness of the argument leaves me to speculate. Essentially, Goins reasserts that he has a first priority claim that is to be paid in full out of the proceeds of the sale. Once again, Goins is off the mark. Goins does not have a claim against the debtor. Even if Goins had a claim, there is nothing to support his claim of first priority status. As I previously discussed, had Goins read section 507 of the Code, he would have concluded the same.

### 7. Objection to Motion to Approve Assumption and Rejection of Executory Contracts

Again, Goins' pre-filing inquiry was unreasonable. In this motion, Goins again asserts the interests of a third party, Investment Limited Partnership and makes oblique references to Minnesota Statutes section 302A and 28 U.S.C. 1334(c)(2). These arguments have been previously discussed and determined to have been made without a reasonable inquiry. Goins further asserts, in a rather cryptic manner, that this court does not have jurisdiction to approve the assumption or rejection of an executory contract; the Letter Agreement. Goins cites Public Law 102–140 for this proposition. Since a specific section was not cited I had to read all 50 pages of Public Law 102–140. I was disappointed, but not surprised, to find that Public Law 102–140 does not in any way limit my jurisdiction to decide whether the Letter Agreement was an executory contract and whether it could be rejected. Public Law 102–140 is an appropriations bill; it has nothing to do with FCC's Minority Ownership Policy or federal court jurisdiction. This conclusion is not difficult to reach. Indeed, all one needs to do is obtain and read the document. Goins should been as thoughtful as he was resourceful. Goins should have read Public Law 102–140 before filing the motion. However, Goins either chose not to read the Public Law or ignore its contents. That being the case Goins failed to make a reasonable inquiry in violation of Rule 9011 fail.

### 8. Motion to Strike Trustee's Motion Under § 502

This motion again asserts that Goins has a claim against the debtor based on the Letter Agreement. As previously mentioned, any reliance on the Letter Agreement was done without reasonable inquiry. Accordingly, this motion was also filed in violation of Rule 9011.

### 9. Objection to Trustee's Objection to Notice of Proof of Claim Filed by N. Walter Goins

Goins asserts that granting the trustees motion disallowing Goins' claim "would

---

*tionary* 1115 (6th ed. 1990). The readers of this opinion should not be burdened like I was.

Goins' assertion could have been easily explained in English.

deny Goins his due process rights in light of the procedural history of this case." No factual or legal basis exists supporting this assertion. The due process clause of the Fourteenth and Fifth Amendments provides that neither the state nor the federal government state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. V; U.S. Const., amend. XIV. Goins does not cite one case or statute for his proposition and has not argued that he was deprived of "life," "liberty" or "property" by the either the state or the federal government. Properly so, no cases or arguments exist; Goins is not being deprived of "life," "liberty" or "property." All the uncontroverted facts and law are to the contrary.

This court has unequivocally given Goins process throughout the case. Goins' absolute freedom to file his proof of claim, appear in court, file memorandum and responsive papers has not been inhibited in any way by this court. *See generally,* Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law,* v. 2 §§ 17.3–4, 17.7–9 (collecting and analyzing case law on procedural due process). Had Goins done any inquiry, he would have concluded the same. Indeed, a "reasonable inquiry" such as a cursory reading of any legal encyclopedia or a short conversation with his attorney brother would have dissuaded Goins from asserting this objectively meritless due process argument.

■■■ Like all the previous motions, Goins attempts to use legally significant terms without the faintest understanding what they mean. This simply is inexcusable. Rule 9011 requires that a signer have a minimal understanding of terms and their implication. This is done by performing a reasonable inquiry; an inquiry which was not done here. Goins unreasonable and patently meritless legal argument cannot stand under the scrutiny of Rule 9011. *Szabo Food Serv., Inc. v. Canteen Corp.,* 823 F.2d 1073, 1080 (7th Cir.1987) ("wacky" due process arguments are sanctionable), *cert. dismissed,* 485 U.S. 901, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988).

### C. *Conclusion*

Each and every piece of paper that was signed and filed by Goins violated Rule 9011. Each filing is riddled with numerous irrelevant, unsubstantiated, sensational factual and legal allegations. I do not expect lawyer-like results from Goins. However, I do expect that Goins and other pro se parties will look into the facts and law using common sense, making obvious phone calls, reading cited material and supporting legal conclusions with citation to a statute, precedent or other authoritative material that is directly applicable to the position taken. Unfortunately, Goins did not meet these expectations. A court is no place for people to pursue a hobby; Goins must be sanctioned.

### III.

### *Did Goins File Papers for an Improper Purpose?*

The last prong of Rule 9011 expressly forbids any filing that is brought for any improper purpose such as harassment, delay, or an unnecessary increase in costs. *See* Fed.R.Bankr.P. 9011. This prong pulls at two competing policies. On one hand, an attorney has a duty to represent her client zealously. On the other, Rule 9011 was designed to reduce frivolous claims, defenses, and motions. "[T]he challenge facing the court, therefore, is to construe the Rule in a manner that will promote the goal of limiting harassment, delay and expense, without impeding zealous advocacy or freezing the common law in the status quo." *Aetna Life Ins. Co. v. Alla Medical Services, Inc.,* 855 F.2d 1470, 1476 (9th Cir.1988); *see also Stitt v. Williams,* 919 F.2d 516 (9th Cir.1990).

■■■ While the improper purpose prong of Rule 9011 embodies the subjective component of the rule, the signer's conduct is judged objectively looking at the facts of the case, the reasonableness of the pleading and the circumstances of the filing. *See In re Kunstler,* 914 F.2d 505, 518–20 (4th Cir.1990) (discussing and clarifying why an objective standard is used), *cert. denied,* — U.S. ——, 111 S.Ct. 1607, 113

L.Ed.2d 669 (1991); *Deere & Co. v. Deutsche Lufthansa Aktiengesellschaft*, 855 F.2d 385, 393 (7th Cir.1988) (citation omitted); *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 n. 9 (9th Cir.1986). One of the circumstances frequently considered and given great weight in favor of sanctions is whether the signer did a reasonable inquiry. *See, e.g., In re Kunstler*, 914 F.2d at 518 ("whether or not a pleading has a foundation in fact or is well grounded in law will often influence the determination of the signer's purpose, and we suggest that a district court should consider the first two prongs of Rule 11 before making a determination of improper purpose"); *Valley Nat'l Bank of Arizona v. Needler (In re Grantham )*, 922 F.2d 1438, 1443 (9th Cir.1991) (quoting *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir.1990) ("frivolous and improper purpose prongs of Rule 11 overlap, and 'evidence bearing on frivolousness ... will often be highly probative of purpose'."). However, doing a reasonable inquiry does not save the signer from sanctions. Indeed, the plain language of Rule 9011 provides that a party can be sanctioned for filing a factually and legally well-grounded paper for improper purposes. *See* Fed. R.Bankr.P. 9011; *Mars Steel Corp.*, 880 F.2d at 931–932 ("A paper 'interposed for any improper purpose' is sanctionable whether or not it is supported by the facts and the law, and no matter how careful the pre-filing investigation."); *Szabo Food Serv., Inc.*, 823 F.2d at 1083; *Brown*, 830 F.2d at 1436; *In re Park Place Assoc.*, 118 B.R. 613, 616 (Bankr.N.D.Ill.1990).

27. Surely the trustee and other parties considered Goins' filings harassing. However, that is not the standard:

> [I]t is not enough that the injured party subjectively believes that a lawsuit was brought to harass, or to focus negative publicity on the injured party; instead, such improper purposes must be derived from the motive of the signer in pursuing the suit. An opponent in a lawsuit, particularly a defendant, will nearly always subjectively feel that the lawsuit was brought for less than proper purposes; plaintiffs and defendants are not often on congenial terms at the time a suit is brought. However, a court must ignore evidence of the

Inferences can play an important role when analyzing a filing under the improper purpose prong. Indeed, it is unlikely that an alleged Rule 9011 violator will admit its wrongdoing.

### A. *Did Goins' Filings Constitute Harassment?*

■ Rule 9011 expressly provides that a signer must be sanctioned for filings brought to harass other parties. *See* Fed. R.Bankr.P. 9011. The signer's conduct is harassing when objectively it persistently irritates or torments the other party. *See* Webster's Third New International Dictionary 1031 (1976). Thus, objectively analyzing whether the filing was brought to harass, courts should consider whether there was some motive to harass, such as retaliation *Lukas v. Nasco Int'l Inc.*, 128 F.R.D. 619, 623 (D.N.J.1989); whether the filing merely repeats previously unsuccessful claims *see, e.g., McLaughlin v. Bradlee*, 803 F.2d 1197, 1205 (D.C.Cir.1986); *Cannon v. Loyola Univ. of Chicago*, 784 F.2d 777, 781–82 (7th Cir.1986); *Zaldivar*, 780 F.2d at 832, and the frivolousness of the current filing *In re Kunstler*, 914 F.2d at 518.

■ While all of Goins' papers were filed without a reasonable inquiry into the facts or law, none of Goins' filings, except for the motion to quash were, harassing.[27] Goins believes he has been wronged. By whom, neither he nor I know. Nonetheless, Goins has gone forward seeking to right this wrong. In this case, Goins has put his finger on the Letter Agreement asserting a claim against the debtor, a party to the agreement. Asserting this claim,

> injured party's subjective beliefs and look from more objective evidence of the signer's purpose.
>
> There is some paradox involved in this analysis, because it is appropriate to consider the *signer's* subjective beliefs to determine the signer's purpose in filing suit, if such beliefs are revealed through an admission that the signer knew that the motion or plead was baseless but filed it nonetheless. This evidence may be said to be "objective" in the sense that it can be viewed by a court without fear of misinterpretation; it does not involve difficult determinations of credibility.
>
> *In re Kunstler*, 914 F.2d at 519.

Goins was looking to enforce whatever real or imaginary rights he believed he had.

Along the way, Goins has obtained a rather interesting bag of legal terms and phrases. Goins frequently used these terms throughout this case. While used thoughtlessly, Goins' real concern was the preservation of whatever rights he had under the Letter Agreement. This was the apparent purpose for all but one of Goins' pleadings.

I will, however, sanction Goins for filing his motion to quash. Goins sought to harass the trustee. The trustee subpoenaed Goins to investigate his claim against the debtor. Goins knew this yet chose to challenge the subpoena. If Goins was attempting to right his wrong by asserting a claim against the debtor, filing the motion to quash was counterproductive. Indeed, to properly adjudicate Goins' claim, if one existed, the trustee was responsible to investigate the claim's asserted basis. If Goins was as confident as he claimed, the deposition should have gone forward without objection of any variety. All of this leads me to believe that Goins was upset with the idea of being deposed by the trustee. Frankly, Goins was already suspicious of the trustee and his attorneys. According to Goins' testimony and verified statement, Goins contacted the trustee's attorneys on December 20, 1991. Without going into the details, the thrust of the conversation was displeasing to Goins. While I understand that Goins may have been unhappy, that is no excuse for filing a motion to forestall and harass the trustee's proper investigation into Goins' claim. I find that the motion to quash was made to harass the trustee in violation of Rule 9011.

### B. Did Goins Seek to Delay the Case?

#### 1. Objection of Claimant & Motion for Stay of Approval of Trustee's Motion & Declaratory Relief

Goins essentially asserted that I should have stopped everything until the Letter Agreement was filed with the F.C.C. and alleged regulatory issues pending with the F.C.C. and the District of Columbia Circuit are resolved.[28] As discussed, Goins did not have a factual or legal basis for his claim for relief. A reasonable inquiry would have proven the same. Baselessly asking me to stop the case is an improper request aimed at one thing; delay in violation of Rule 9011.

#### 2. Motion to Quash

Again, Goins sought to delay the case by filing his motion to quash. Indeed, Goins wanted me to flat out stop the trustee from deposing him. Goins claimed such action was merited since deposition testimony may relate to matters pending with the District of Columbia Circuit and the F.C.C. I find this position incredulous. If Goins truly believed in his claims, then he should have jumped at the opportunity to lay out his case. Instead, he resisted doing so at every turn.

Simply, Goins is asking me to baselessly stall the case hoping that a court somewhere will right his alleged wrong. Goins cannot expect me to baselessly delay a case so he can forum shop. Indeed, such expectations are expressly violative of the improper purpose prong of Rule 9011 which Goins must be sanctioned for.

#### 3. Motion to Strike Trustee's Unauthorized Motion to Approve Rejection of Executory Contract

Basically, Goins argues that, I have no jurisdiction to decide the fate of the Letter Agreement as it relates to the debtor. Goins would have me believe that I should have stopped the case because of his state court action against Halcomm. Unfortunately, Goins was dead wrong. Goins should have realized the same. However, Goins chose not to inquire. Rather, Goins blindly decided to pursue a baseless action intending to delay this case. Goins' actions and inactions leave only one conclusion; Goins violated the improper purpose prong of Rule 9011.

---

**28.** This is a clear example of Goins' multi-venue shotgun attempt to right his alleged wrong.

**4. *Objection to Amended Notice & Trustee's Motion for Approval of Sale of Substantially all Assets of Estate & Motion for Approval of Assumption & Assignment of Substantially all Leases & Contracts***

This objection was filed by Goins to "continue his objection to any and all plans of the Trustee which result in a sale of substantially all assets of the estate and the transfer of substantially all leases and contracts of the estate if such plan does not provide Goins receive full and fair payment of his interest...." Essentially, Goins is making it clear that I should stop the case. As I previously concluded, any attempts by Goins to derail the case were baseless attempts in violation of the improper purpose prong of Rule 9011.

**5. *Objection to Motion to Approve Assumption and Rejection of Executory Contracts***

Again, Goins asserted that I did not have jurisdiction to approve the trustee's motion to reject the Letter Agreement, if it were enforceable, as an executory contract. As previously concluded, this in a patently meritless argument designed to delay the case in violation of Rule 9011.

**C. *Conclusion***

Goins feels like he has been wronged. It is those feelings that have fueled Goins' pursuits and frustration. Goins has used a shotgun approach asserting claims and causes of action wherever he thinks he can. Unfortunately, Goins filed many motions carelessly harassing the trustee and causing delay. Goins discovered a series of words, phrases, statutes, rules, regulations and cases which had an important ring to them but of which he had no real understanding. Rather than make any inquiry as to their meaning, Goins threw them into pleadings, hoping that something would happen. Goins' behavior violated Rule 9011. I must sanction him.

**IV.**

***Sanctions***

Goins has left me no room; each of his nine filings violated Rule 9011. I must

order sanctions. *In re Gioioso*, 979 F.2d at 960–61 (citation omitted). However, determining what to sanction Goins is not an easy task. No bright-line test exists.

■ Courts are given broad discretion in fashioning Rule 9011 awards. *See Figueroa–Ruiz v. Alegria*, 905 F.2d 545, 548 (1st Cir.1990); *Glass v. IDS Financial Serv., Inc.*, 137 F.R.D. 262, 263 (D.Minn. 1991) (law firms each sanctioned $50,000. for submitting briefs which unnecessarily delayed the litigation). Exercising this broad discretion, I must be mindful of the overall purpose of Rule 9011 sanctions, deterrence. *White v. General Motors Corp.*, 908 F.2d at 683 (sanctions serve many purposes—deterrence, punishment, compensation, streamlining dockets—but deterrence is the primary goal); *Quiros*, 800 F.2d at 3 (Rule 11 deters filing of meritless claims and compensates those forced to respond). I must also consider that Rule 9011 was never intended to be a fee shifting statute. *Business Guides*, 498 U.S. at 552–53, 111 S.Ct. at 934 (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 407, 110 S.Ct. 2447, 2462, 110 L.Ed.2d 359 (1990)). The winner does not get all. On the other hand, the loser is not entirely off the hook. Appropriately, a violator of Rule 9011 must be deterred. A sanction must be imposed that sends a clear message that the violator's behavior will not be tolerated and must stop. *See, e.g., Hilton Hotels Corp. v. Banov.*, 899 F.2d 40, 46 (D.C.Cir.1990) (court balanced defendant's interest in compensation with attorney's ability to pay and the amount necessary to achieve deterrence); *In re Kunstler*, 914 F.2d at 522 (the " 'first' purpose of Rule 11 is to deter future litigation abuse."); *Chris & Todd, Inc. v. Arkansas Dept. of Fin. & Admin.*, 125 F.R.D. 491, 493–94 (E.D.Ark.1989) ("[Rule 9011] sanction are not intended to make a moving party "whole" for any and all damages ... sustained by virtue of ... a meritless claim ... [r]ather, the court's focus in what is needed to deter such conduct in the future.").

■ Since no litmus test exists, when determining an appropriate monetary sanction, I find it instructive to consider:

(1) the reasonableness of the opposing party's attorney's fees;

(2) the minimum to deter;

(3) the ability to pay; and

(4) the relative severity of the Rule 9011 violations.

*Brubaker v. City of Richmond,* 943 F.2d 1363, 1387 (4th Cir.1991); *White v. General Motors Corp.,* 908 F.2d 675, 684 (10th Cir. 1990), *cert. denied,* 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991).

Each of the moving parties have submitted an affidavit requesting attorney's fees incurred defending Goins' filings. The trustee claims $35,202.35; Sonlight Television, Inc. claims $17,196.50 while the unsecured creditors' committee claims $1,500.00.

The trustee's and the committee's fees and expenses are paid by the estate which reduces the distribution to unsecured creditors. Unfortunately, then, it is the creditors who bear the brunt of the cost of Goins' litigation. It is a cost which is forever mounting as Goins pursues various appeals as well as the separate civil action he brought against the trustee and his attorney in the district court.

I consider the series of violations to be severe. However, other than my observation regarding Goins' obvious education, intelligence, articulateness and his status as an owner of two television stations I know little about his ability to pay. Thus, I am in no position to award full compensatory sanctions.

However, it is essential that sanctions be sufficient to act as a deterrent to future violations. I am therefore granting the trustee's and the committee's motions by awarding them a total of $8,000 in sanctions to be paid to the trustee to be added to the estate for distribution under the trustee's plan. I am also granting Sonlight's motion by awarding it $2,000 in sanctions.

Access to the court is an absolute right. However, used as an arena to vent baseless frustration and anger, the right is abused.

**THEREFORE, IT IS ORDERED:**

1. Donald R. Johnston, as trustee, shall recover from N. Walter Goins the sum of $8,000 together with interest thereon as provided by law; and

2. Sonlight Television, Inc. shall recover from N. Walter Goins the sum of $2,000 together with interest thereon as provided by law.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

